# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JOSHUA ROPA, BETHANY ROPA | § § § | |
| v. | § § | Civil Action No. 4:16-CV-00752<br>Judge Mazzant |
| MATTHEW FOX, WAYNE ENERGY, LLC | § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs Joshua Ropa and Bethany Ropa's (collectively, "Plaintiffs") Application for Preliminary Injunction (Dkt. #7). After considering the relevant pleadings, testimony, and exhibits from the preliminary injunction hearing, the Court finds that Plaintiffs' application should be granted.

On October 13, 2016, the Court held an evidentiary hearing on Plaintiffs' Application for Preliminary Injunction. Having found that Plaintiffs satisfied the requirements of Rule 65 of the Federal Rules of Civil Procedure, the Court granted the preliminary injunction. The Court sets forth the following findings of fact and conclusions of law to support its grant of the injunction, which is based on Plaintiffs' submissions in connection with the preliminary injunction, as well as exhibits and testimony presented at the injunction hearing. Defendants Matthew Fox and Wayne Energy, LLC did not present any evidence at the hearing or make any submission to the Court in opposition of the injunction.

## BACKGROUND

This case arises from a Joint Venture Agreement entered into between Plaintiffs, Matthew Fox ("Fox"), and Wayne Energy, LLC ("Wayne Energy") (collectively "Defendants"). Plaintiffs are residents New York and were introduced to Fox in April 2015. Fox owned Wayne

Energy, a company involved in oil and gas investments in Texas. Plaintiffs were interested in investing into a Wayne Energy project. The project was to purchase, rework, and recomplete an oil and gas well in Upshur County, Texas, called the Glover #1B Well (the "Glover Well"). Fox explained that a 1% working interest in the Glover Well could be purchased for $25,000.

During initial negotiations, Plaintiffs received a Joint Venture Agreement by which Wayne Energy was the Managing Venturer and Plaintiffs were Venturers. Plaintiffs eventually signed this agreement, and Fox signed on behalf of Wayne Energy. Plaintiffs also received a Confidential Information Memorandum ("CIM") that provided the capitalization period for the project. According to the CIM, Wayne Energy was partially capitalizing the Glover Well. However, Plaintiffs later learned that Wayne Energy did not put any money into the project but was taking a 25% working interest for itself and raising funds for the other 75% working interest.

On April 26, 2015, Fox sent Plaintiffs an email and told them the Glover Well would take no longer than forty-five days to complete, with first revenue checks distributed within sixty days of that. This email exchange revealed that this project was Wayne Energy's first drilling venture. Fox told Plaintiffs that his prior company, Frisco Exploration, had drilled seventeen wells. Further, the CIM stated that Wayne Energy was a licensed operator with the State of Texas Railroad Commission. But, according to the Texas Railroad Commission, Wayne Energy was not a licensed operator. Fox represented Frisco Exploration's operator number as Wayne Energy's.

Through oral statements, emails, the Joint Venture Agreement, and the CIM, Plaintiffs believed the project would soon be completed and would start returning profits, so they invested an initial $25,000 for a 1% interest in the Glover Well. In a June 2015 email, Fox said there was a hold-up in funding, and he requested from investors an additional 10% ($250,000) so the

2

Glover Well could be set for production in forty-five days.  Plaintiffs invested additional amounts of $25,000 and $37,500 in reliance that these amounts were needed to move the project forward—gaining a 5.5% working interest.

By September 2015, Fox provided Plaintiffs with a list of work that had been done on the Glover Well, telling them it would be completed in about thirty days.  Five months later, Fox said the well was drilled and logged.  In March 2016, Fox stated he needed extra money for additional site work to bring the well online.  Plaintiffs paid $50,000 for a 2% working interest, with an additional 2% being gifted to them.  The next month, Fox convinced Plaintiffs to invest $25,000 for a 4% working interest, with an additional 1.5% being gifted.  Fox said the site work was nearly complete, and he was just a few weeks away from commencing production.  By this point, Plaintiffs had a total working interest of 16%.

Plaintiffs decided to fly down to the Glover Well site in May 2016.  Plaintiffs met with Fox, and after particulars were discussed, they felt better about the project.  The next month, Fox told Plaintiffs he was selling some of his interest to fund the purchase of adjacent mineral leases.  Fox said if he waited until after the Glover Well came online and was reported with the railroad commission, the price of the adjacent lease interests would go up or someone else would outbid him.  Plaintiffs wanted the project finished, so they invested an additional $77,000 for a 4% working interest, bringing their total working interest to 20%.

By email on July 17, 2016, Fox told Plaintiffs the well was only days from being online.  Unknown to Plaintiffs, Wayne Energy had not purchased the Glover Well from Graward Operating of Tyler, Texas ("Graward Operating"), which owned 100% of the well.  Also, operation of the Glover Well had not been transferred to Wayne Energy.

Plaintiffs visited the Glover Well again on July 23, 2016, with Fox. Once on-site, Plaintiffs noticed little work had been done and were suspicious of Fox's representations. Fox assured Plaintiffs the well would be online by the end of the month. He said there were a few outstanding action items, but the project was done raising capital and all the work to be done on site had been prepaid. However, based on information from John Graham ("Graham"), President of Graward Operating, virtually nothing had been done to rework or recomplete the Glover Well. In fact, none of the work represented to Plaintiffs in prior communications had been completed.

Following Plaintiffs' visit to Texas, Fox provided Plaintiffs with the investor log for the Glover Well. According to Fox, the "Move over SG2" entries were investments in the South Gilmer 2 Well that were moved over to the Glover Well joint venture, because the South Gilmer 2 Well investment did not work out. Also, Fox claimed only $452,500 in capital had been raised for the Glover Well project. Based on Plaintiffs' actual investment and those whose working interests were moved over from South Gilmer 2, about $740,000 had been raised for the Glover Well. Graham projected the Glover Well could be purchased and the project completed for $600,000.

Plaintiffs hired an attorney in Tyler, Texas, Steve Mason ("Mason"). On August 26, 2016, Plaintiffs and Mason met with Fox and asked him questions about the Glover Well project. Fox stated the entire amount of funds raised for the project was around $450,000, and all investment funds were paid to Graham for work on the Glover Well, which was paid in full. Fox also stated Wayne Energy did not have its P-5 operator status from the Texas Railroad Commission but was using Graham as its operator. Fox assured Plaintiffs that work would be done the following week.

According to Graham, he was not engaged as operator of the Glover Well, the Glover Well had not been paid in full—$81,000 was still owed to him to complete the lease assignment—and none of the investment funds had been paid to him for work done. At the October 13, 2016 preliminary injunction hearing, Graham testified that Defendants had finally paid the full purchase price for the Glover Well.

Plaintiffs invested a total of $239,500 to Fox and Wayne Energy and received a 20% working interest in the Glover Well. To learn where their money was spent, Plaintiffs exercised their right to review books and records under the Joint Venture Agreement upon forty-eight hours' notice. Fox failed to produce the books and records as demanded when Mason arrived at Fox's office.

Plaintiffs filed their complaint against Defendants Fox and Wayne Energy on September 29, 2016 (Dkt. #1). Plaintiffs allege claims against Defendants for: (1) common law fraud; (2) statutory fraud; (3) breach of contract; (4) breach of fiduciary duties; (5) imposition of an express, resulting, and/or constructive trust; (6) conversion; (7) statutory theft; (8) violation of Texas securities laws; (9) violation of the Texas Deceptive Trade Practices Act; and (10) unjust enrichment.

## ANALYSIS

Under Rule 65 of the Federal Rules of Civil Procedure, "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts sought to be restrained." FED. R. CIV. P. 65(d). Plaintiffs seeking injunctive relief must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any

damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

"A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* The denial of a preliminary injunction will be upheld where the movant has failed sufficiently to establish any one of the four criteria. *Black Fire Fighters Ass'n v . City of Dall.*, 905 F.2d 63, 65 (5th Cir. 1990). Injunctive relief requires the movant to unequivocally show the need for its issuance. *See Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 2005). The movant has the burden of introducing sufficient evidence to prove each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *See PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005); *Miss. Power and Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

Plaintiffs seek to enjoin Defendants from disposing of any funds or assets related to the Glover Well or the South Gilmer 2 Well joint ventures. Plaintiffs also seek a comprehensive list of each investor into the Glover Well, regardless of whether the investor was moved over from the South Gilmer 2 Well project. Finally, Plaintiffs want Defendants to produce all books and records associated with the Glover Well and the South Gilmer 2 joint ventures.

**Substantial Likelihood of Success on the Merits**

To prevail on their application for a preliminary injunction, Plaintiffs must first demonstrate a substantial likelihood of success on the merits. A likelihood of success on the merits requires a movant to present a prima facie case. *Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011)).

In their application and at the injunction hearing, Plaintiffs focused primarily on two causes of action—fraud and breach of fiduciary duty. In Texas, to recover for fraud, a plaintiff must show: (1) that a material misrepresentation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without knowledge of the truth; (4) that he made it with the intention that it should be acted on the party; (5) that the party acted in reliance on it; and (6) resultant damages. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977). Plaintiffs presented evidence that Fox made multiple misrepresentations regarding the progress of work on the Glover Well and Wayne Energy's status as an operator. Plaintiffs also presented evidence that Fox mispresented the amount of money actually invested into the Glover Well project. Plaintiffs invested $239,500, relying on the representations and promises of Fox and Wayne Energy, which were made orally, in emails and texts from Fox, and in documents.[1] Because Fox invoked his Fifth Amendment rights when questioned about the Glover Well, the Court may draw an adverse inference against him. "[I]t is well-settled that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Hinojosa v. Butler*, 547 F.3d 285, 291 (5th Cir. 2008). The Court determines that there is a substantial likelihood of success on the merits of Plaintiffs' fraud claim, based on the evidence admitted at the injunction hearing, the testimony of Mrs. Ropa and Graham, and adverse inferences drawn against Fox.

The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship existed between plaintiff and defendant; (2) a breach by defendant of his fiduciary duty to the plaintiff; and (3) an injury to plaintiff or benefit to the defendant as a result of the defendant's breach.

---

[1] During the course of the Glover Well investment, Fox and Wayne Energy provided Plaintiffs with a 2015 K-1 for tax purposes. Fox and Wayne Energy produced false K-1s based upon expenses and deductions that were never incurred. The only expenses known to Plaintiffs were the partial payment to Graward Operating of $169,000 and $600 for dirt work.

*Fred Loya Ins. Agency, Inc. v. Cohen*, 446 S.W.3d 913, 919 (Tex. App.—El Paso 2014, pet. denied). The underlying facts of the fiduciary duty claim are essentially identical to the fraud claim. Under the Joint Venture Agreement, Wayne Energy was the Managing Venturer of the Glover Well project. Wayne Energy was tasked with managing "Joint Venture affairs in a prudent and businesslike manner" and "act[ing] in the best interests of the Joint Venture." (Dkt. #1, Exhibit A at p. 12). As Wayne Energy's principal executive officer, Fox had a duty to ensure Wayne Energy complied with the Joint Venture Agreement. Based on the evidence and exhibits provided by Plaintiffs, the Court determines that Plaintiffs have shown a substantial likelihood of success on the merits regarding their breach of fiduciary duty claim.

### Substantial Threat of Irreparable Harm

A movant must show that "irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Ref. Council, Inc.*, 555 U.S. 7, 22 (2008). Unless Defendants are enjoined from disposing of investment funds, then Plaintiffs will be deprived of the whereabouts of their investment, as well as any assets bought with or resulting from investment funds. Therefore, the Court finds that Plaintiffs will suffer irreparable harm.

### Balance of Harms and Public Interest

When deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief . . . pay[ing] particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 9. The Court finds the final two prongs of the preliminary injunction analysis weigh in favor of Plaintiffs. Plaintiffs have shown a likelihood of success on the merits and irreparable harm. The harm to Defendants is minimal because the injunction requires only that Defendants hold, collect, and account for all assets

traceable to the Glover Well and the South Gilmer 2 Well joint ventures. A preliminary injunction based on the facts of this case will not disserve the public interest. In fact, it is in the public's interest to protect against fraud and to make victims from fraud whole, while also preventing wrongdoers from benefitting from their actions.

## CONCLUSION

For the reasons set forth herein, Plaintiffs' Application for Preliminary Injunction (Dkt. #7) is **GRANTED**. An Order of Preliminary Injunction was separately issued following the October 13, 2016 injunction hearing.

**IT IS SO ORDERED.**

 **SIGNED this 26th day of October, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE